Second case, Howard Hess Dental Vs. Dentsply. Howard Hess Dental Vs. Dentsply. Good morning, Your Honor. May it please the Court, my name is Thomas Hess. I represent Jersey Dental, as well as Philip Gutierrez, who is doing business as Dentures Plus, as well as the punitive class of dental labs in this matter. I would like to reserve five minutes for rebuttal, if I may. There are two appeals before this Court, and they come to this Court in strikingly different procedural postures, and it's important to keep that in mind. We have the Hess appeal, which deals with the injunction that comes to this Court after a trial by the government, and an appeal by the government, and a former appeal by us. The focus of that case was Dentsply, what it did and didn't do. We have, in the second case, the Jersey Dental case, an appeal for motions to dismiss for failure to state a claim, and the issue is whether under Twombly, those claims are plausible, and whether they do indeed state a claim. First, I'd like to address the injunction and the argument that we are entitled to an injunction in the Hess case. Secondly, I would like to address that part of the Jersey Dental case, which I think is pivotal, which is whether we have specifically and properly alleged a specific intent under Section 2, conspiracy to monopolize. Thirdly, I'd like to turn to the Section 1 part of the Jersey Dental case, which is the rim and spoke issue, and that has two parts. One, we submit that we properly alleged a whole conspiracy, as the term is used, and alternatively, that we have stated a claim against three of the largest dealers, which impacts the competitive impact requirement. And finally, as cleanup, we submit that there are no Illinois brick arguments left that would impede our recovery here, at least at this stage, at the pleading stage. We have now sued the direct purchaser. We submit that's beyond dispute, and we're entitled to, we submit at the very least, lost profit damages, as well as other alternative measures of damages that come from Densply. Let me start by telling the court what our theory of the case is, because we submit we should be masters of our theory and masters of our allegations, because a lot has been said, and obviously the coercion variable is significant. We say that this is a two-step process and can really only be understood as a two-step process. Densply comes to the dealers and it says you must sign dealer criterion six, which says if you handle Densply teeth, you can only handle Densply teeth. There were some dealers that were grandfathered, but that was basically the deal. That dealer knows that Densply has a 75 to 80 percent market share, and that as a practical matter, economically, it cannot agree with that except if it wants to take an extreme risk. Then we get to step two. Step two is, okay, I'm put into this position where I have to accept this deal. What happens next? And at step two, we say that they decided that they would enter into an agreement, given this bad situation, and that they would, in the words, paraphrasing paragraph 140 of the Maintainer of the Monopoly so that no one could cheat. If we're all stuck in this boat, we need a strong hand at the tiller. If we're all on this playing field, we need a policeman to make sure that no one cheats. Yes, Your Honor. I don't mean to interrupt you, but perhaps you could explain to me why Judge Robinson was wrong in denying summary judgment with respect to your claim for lateral estoppel on the injunction issue. We submit, Your Honor, that the critical and, indeed, the operative facts were already decided by this Court, and therefore, collateral estoppel was appropriate. You're asking for collateral estoppel in connection with the government suit, correct? Mm-hmm. I thought you were saying that the government suit established the government was entitled to an injunction against dense supply. So through collateral estoppel, you were entitled to an injunction against dense supply. Well, there are two issues. First, what was established or not established? Could I state the problem correctly? I think you conflated two problems or two issues. Okay. The first issue is, based on the record, what is there that might be the basis of collateral estoppel. Then the second issue is the borden issue of if we're right that those were established, are we entitled to an injunction or are we barred because the government already has an injunction? Okay. As to the first issue, in the U.S. government case, the Third Circuit, this Court, talked about limitation of choice and talked about Is that the same as economic harm to your clients? Yes, it is, because the Court held in part that lacking choice was injury to the dental labs. It was not just focused on the dealers, specifically in that part of the decision that talked about anti-competitive effects. I mean, there's really one thing going on, which is dealer criteria in six, but in the competitive effects part of the opinion, it talks about, it plays that out and looks at a number of those, including Sorry? If we determine that there was no economic injury to your clients shown in the government's record, then collateral estoppel would not apply, correct? That's correct, Your Honor, but we think it's beyond doubt that the Court Well, if we have a doubt, and if we say that your clients were not parties to that dispute, it was between Dent Supply and the government, and there was no economic injury shown to your clients, then Judge Robinson was right. If you assume all those things, that's probably right, but first of all, we say that Or if we decide Right. We say that we can use the government's, the decision and the judgment against the That's really not in dispute. What's in dispute is what was decided and what was set, and we say that it's clear that the Third Circuit in the government case reached injury to the labs. Granted, it was a case mainly about opening up the dealers, but it talked about denying competitive choice to the labs, our clients. Let's say we agree with you hypothetically that the exclusionary practices, and in fact this is what was stated by the Court in the government's case, resulted in additional anti-competitive effects. Now you want to enjoin or the issuance of an injunction that seems to me substantially broader than the one that was issued to the government. It also seems to me that the Court was very concerned about your showing or lack of showing a future harm. Could you address why an injunction should be issued under those circumstances? Absolutely. First of all, the Court below, as a matter of law, applied the wrong standard. Under Borden, the language of Borden is very clear that government's case and the private's case should proceed independently. Indeed, the language of the Court is even stronger than that. It says that the two actions should proceed, quote, in disregard of each other. Let's say I agree with you, and so I wouldn't dispute that you have a right to a private right to an injunction. Nonetheless, can you point to something in the record suggesting that there is a threat to future harm? That's not the test. It's an alternative test, but it's not the test because it depends upon at what point you look at it from. We say you look at because they're on separate tracks, and that's what the Supreme Court has held, we can rely on the initial harm as the basis for our injunction. We don't have to say, oh, the government got its injunction. Now we have the burden of showing yet more risk of threatened conduct. So you would say any time that the government obtains an injunction, a private party has a similar right without any additional showing? No. We have to have a fairly – we have to have – we bear the burden of showing collateral estoppel and that there are factual findings. Well, that gives you a predicate, I suppose, for getting the injunction. But don't you have to prove that there's a need for the injunction? We have proved that there is a need for injunction, assuming that we can rely on the antecedent conduct that the government relied on, and we submit that Borden says that. We submit that the Microsoft case – Why isn't the government injunction sufficient? It is insufficient for – No, no, not insufficient. Sufficient. Why is it sufficient? Why is it not sufficient? Fine. I understand the question now. We say it's not sufficient for a number of reasons. First, its duration is too short, number one. Number two, it is not a permanent injunction, which, under Zenith against Hazeltine, is the framework for – Can't we go in at the end of seven years, if there's still a problem, and ask for the injunction to be continued? Would another injunction be put in place? Could we? I'm not sure that the Court would say that we would have standing after seven and a half years. It's a government injunction. If it's our injunction – Well, you clearly are on the record. You've been here. You've been fighting this battle. We've been fighting the battle for ten years. There's no question about that. But I think it's a question of injunction law standing. Since it's a government injunction, I don't think it can expire after seven and a half years and we show up and say, hey, it should be extended. I think we need our own injunction to do that. You haven't explained why. You keep saying we're not going to be – we don't have standing. I don't think standing is quite what you have in mind. Why wouldn't you have standing? After seven and a half – You say you sustained injury. Yes. And if the conduct resumes, you'll sustain injury again. Why wouldn't you have standing? We would have standing to start all over again to show new conduct. I thought the question was whether we could have our injunction predicated on the old conduct, and that is our position, that under Borden we can base – and that was the holding of the Microsoft decision as well that cited Borden. When the states went in for a similar injunction that the government had already gotten, granted it was in the form of a consent decree, they were – they did not say what's new. They said you can get your injunction based upon what's old. Is your fear that Densply is going to resume its old practices and engage in, let's say, a Criterion 6 type of agreements with dealers? Is that your fear? Indeed it is because they – it took them a number of years to get to a position of large market share. Then they added on top of that dealer Criterion 6, which increased their market share another – depending upon how you do the arithmetic – 20 to 30 percent. If they did, wouldn't that serve as an independent basis to continue the current injunction that was awarded to the – Well, again, it's not clear that we would have standing to go in and say we're here and we want the government – Because the government – Because we're not the government. No, but you say you're harmed. What Judge Fuentes just asked you is if they start this behavior again, why couldn't you go into court and say please extend this injunction? We could. And why isn't that sufficient? It is insufficient given the nature and the history of this and given what Borden says and given that the enforcement of the antitrust laws is best served by having dual injunctions, even if they're totally congruent. If they're totally congruent – You keep making very general statements, but you haven't explained the need for a permanent injunction. The kinds of general statements you make could turn any injunction that lasts for years into a permanent injunction. Why is a permanent injunction merited here, warranted here, when you just said you could go into court and get the injunction reinstated if Debt Supply were to start with this Exemption 6 again? Yes, we would have to start from ground zero and prove that they had reinstated Dealer Criterion 6. That is correct. If you want us to start – If you would be imposing upon us the burden of starting from ground zero. Is that – You're making it – You're really making it sound like a space launch. You'd file a complaint. You would attach to the complaint. Whatever it is, you would attach to the complaint. And you'd ask for a TRO. I don't understand. Is that starting from ground zero? Then I guess it's starting from ground zero. Why isn't that sufficient? We think it – Well, it is starting from ground zero, but I think that that oversimplifies the nature of getting an injunction under the antitrust laws and what would happen here. When you have an injunction that the government has obtained and you're saying that as soon as the injunction lapses, you're concerned that Dent Supply is going to start this again. You haven't quite explained why, but you say that you're afraid that they're going to start this again. Are you going to court and say they're at it again? We can say that they're at it again and then the answer is we have to prove it. We have to start taking depositions and we have to develop a whole new factual record that says that we have to do it. That's one reason why. And one has to – That's true when any injunction lapses, is that it? Well, yes and no. The approach that the Supreme Court has taken to injunctions in this area under Zenith against Hazeltine effectively creates a presumption in favor of a permanent injunction and what the court did here is just a bunch of baby splitting to get an injunction of seven and a half years, which is less than half the time the dealer criterion six was in place. Let me turn now briefly, if I may, to the Section 2 specific intent because there we have a perfect pleading issue on a Twombly standard on an appeal from a motion to dismiss and the issue before the court is whether we specifically plead. Your red light is on but you really haven't gotten through these other issues. How about if we just add to both sides five minutes and then let you finish up? Thank you, Your Honor. You've got two or three other things to do. Thank you, Your Honor. Let me do it both ways just to be fair. Will they add five minutes? Turning to the real issue on Section 2 is whether specific intent was properly alleged under the Twombly standard of what is plausible. There are two tests. We say there's an objective test. The other side, in effect, says there is a subjective test. We say that Aspen, this Court's decision in LaPage, and this Court's decision in Broadcom establish an objective test. Namely, that specific intent can be alleged by pleading inefficiencies or anti-competitive conduct. That that is sufficient for pleading purposes to meet the specific intent requirement. The court below Where in the record can you point to establish that the dealers specifically intended to participate in a restrictive trade? Isn't that what we're talking about? What we're talking about is whether the dealers engaged in a conspiracy once they were presented with Dealer Criterion 6 to maintain Densply's monopoly. And we say at paragraph They specifically intended to conspire to maintain Densply's monopoly. That is correct. But specific intent is a term of art under Section 2. You have to apply that. In paragraphs 140, 142, 81. What did you say? We think that we have specifically pled exactly what happened and we have pled essentially No, I think what you've pled is they understood that by participating in this conspiracy they would further Densply's monopoly. But what Judge Robinson, I thought, ruled was that you nowhere pled that they shared the goal of Densply in joining the conspiracy to maintain Densply's monopoly. That was not their goal. I don't think that that's what we understood Judge Robinson to say is something different. She said that they didn't share the same motive as Densply for keeping the monopoly. This was really the other side of the coin that they weren't totally committed to the conspiracy. Well, let me address that separately. In your first iteration of this case and this complaint, you sued the dealers. That's right. Saying that they were... I'm sorry, you sued Densply saying that they had monopolized and victimized the dealers. And then after this court ruled you amended your complaint to say no, the dealers were conspiring with Densply when Illinois BRIC put you out of court. Isn't that what happened to you? No, that's not what happened with all due respect. What happened was that the pleadings, if you look at the pleadings and you look at paragraph 140 and the policing language and the maintenance language, that is consistent throughout every iteration of the complaint. What happened was this. We said on appeal that the conduct of the dealers was sufficient so that that would have certain effects on in pari delicto in the in pari delicto defense, which is a conduct-based defense. Saying that they were coerced and saying that their conduct was less than complete is a different statement than saying they cannot, under any circumstances, they lack the capacity to then enter into a separate agreement. What our colleagues confuse is the conduct which we concede, which is less than full full involvement with Densply with the capacity that once they are faced with the Hobson's choice under dealer criterion six to enter into an... We now concede that the dealers could sue Densply. And they... Well, no, we don't. I thought you did. Well, let me be clear. Before we did and now the statutes of limitations have run on some of them. So now they cannot as to certain years. And indeed, we submit that we should be able to recover on those years, but that's sort of down the road. But in general, in terms of the concept, we say that, yes, that the conduct was such that they could sue Densply back then when they did before the statute of limitations run. But again, the question is... So there are no conspirators with Densply and they can sue Densply for victimizing them in actions that Densply took in furtherance of the conspiracy with the entities that are suing them. Is that what you're saying? That's correct. That their conduct limits, well, their conduct limits certain actions but doesn't preclude all actions. Their conduct limits suits with respect to Densply but it doesn't limit their capacity to enter into an agreement where when faced with this hobson's choice they have to make the best of a bad situation and they need a policeman so that there's no cheating. We don't think that that's inconsistent. We think that argument misconstrues and mixes up certain kinds of conduct and their capacity to have an agreement. On the subject of specific intent Sweeney versus Texaco our case Yes. It's essentially that evidence of concerted action is not sufficient to establish specific intent and it seems to me that your allegations are of concerted action rather than specifically intending a particular result. Could you How do you get around Sweeney versus Texaco? We say that the specific intent is a requirement of Section 2 under cases after Sweeney and Aspen and La Page where the specific intent for pleading purposes and plausibility purposes under Twombly permits us to rely on the anti-competitive effect as evidence of the specific intent and those  post Sweeney and as your Honor knows the Broadcom case is and La Page are more recent so we would say that that is not sufficient to establish specific intent that is the touchstone and that the subjective test which focuses on did the dealers or did the dealers in their heart of hearts want Densply to maintain the monopoly which is in effect the subjective test that the court below applied and that one of the Microsoft cases applied that subjective test is not the law of the land under Aspen or at the very least Aspen and Broadcom provide us an alternative for pleading specific intent I have to cut you off but we'll get you back on rebuttal Thank you Your Honor Ms. Swizzler Thank you Your Honor Margaret Swizzler from Latham and Watkins for the defendant Densply International Inc. Four and a half years ago this court affirmed the district court's grand of summary judgment in Hess and the dismissal of Jersey against Densply so actually I'm a little surprised to be here again but I'm happy to address any issues that you're interested in as well as some of the things that Mr. Dubs has addressed With respect to your offer for five minutes extra if we need it I think my co-counsel will address I'm addressing the Hess case All right so you're addressing the injunction issue and then collateral estoppel judicial estoppel in the Jersey case and specific intent the conversation that you just had with Mr. Dubs so let's start with the injunction in the Hess case that's under section 16 of the Clayton Act that act requires that the plaintiff show threatened loss or damage and in this court's opinion in Warfarin Sodium a case the plaintiffs rely on the court interpreted that requirement to require a significant threat of injury and I think your honors addressed this with Mr. Dubs that they don't have to prove that significant threat under section 16 because the government had already proved it is mixing up two different records the government proved a significant threat of injury from criterion 16 during the trial and was entitled to an injunction according to this court which was entered help me understand one thing can we determine that the appellants are entitled to collateral estoppel because there was a finding by our court involving anti-competitive practices and then that's exactly correct your honors it's a two step analysis the first question is do they have a merits based reason to get an injunction in the first place so and let's remember here that Hess and Jersey are the same company and Hess had two years of discovery because they sued at the same time the government did and their discovery was coordinated with the government case they attended the depositions they opposed our summary judgment motion on the merits of the case and won so this isn't a case where we have like a 12B6 issue they participated so the government gets a finding of anti-competitive effect that the dental labs generally had a limitation of choice as a result of criterion 16 that's not equivalent to a finding of antitrust injury to Hess because that finding antitrust injury would be Hess was a purchaser of teeth Hess wanted to buy teeth of other rivals of dental supply and Hess himself or itself was unable to do it that's antitrust injury so the finding that generally dental laboratories in the country well we have before us a complaint where they an amended complaint where they now bring in their dealers this issue relates only to Hess though don't they also argue that there were two findings in the government's case there were two findings one was the foreclosure of rivals and that was independently sufficient to sustain the injunction okay but isn't the other finding sufficient to give we had established that the policy did not foreclose rivals and this court found however that it limited labs choices would that finding have been sufficient to obtain an injunction against criterion six which operates to open the dealers to rivals that's a disconnect but that's also a different procedural posture you have an injunction here well we do have an injunction so the question is whether the findings that led to the imposition of criterion six collaterally stopped N supply from the merits of the case so here we would not be able to say the criterion six didn't hurt the labs when it was existing from the foreclosure of rivals when the criterion six was in existence however the second finding about dental labs are hurt by their limitation of choice is a general finding of effect and there's a distinction as Judge Robinson found between anti-competitive effect and injury to the antitrust plaintiff and what Hess has not shown here in the Hess case is injury to it it did not plead it did not prove during the case that it wanted to buy teeth of other companies and was unable to because it lacked access to them from the operation of criterion six supposing we were to say that it was the limitation of choices that the labs had in effect resulted in some form of injury entitling it to a protection via an injunction okay then you get to whether or not you need a second injunction here and that was that's the issue that you were discussing with Mr. Doves and it's a different issue and I'd like to address that because that is I think a much simpler question but didn't the court in deciding that misconstrued Borden no your honor it did not in fact Borden holds the exact opposite of what Mr. Doves says Borden hold the government argued this is at the end of the opinion that it had quote an independent right to an injunction without regard to whether such violation has been previously enjoined  private action close quote the court rejected that argument it said that it could not hold as a matter of law that the previous existence of the private injunction did not warrant any consideration by the district court in assessing the government's burden to show a significant threat of recurring injury under section 16 the Borden case supports Judge Robinson's opinion that you don't have to that there is no well Judge Robinson actually did not hold that they weren't entitled to an injunction as a matter of law and my point is Borden doesn't hold that they are either Borden says that in that case the district judge had denied the injunction because of the  of the private decree and so when the reversal happened in the Supreme Court the court said that's not a basis you got to go back and look and see if the government can make the showing under section 16 but the end of the opinion they flatly rejected the idea that the government was entitled to a they have to show as a matter of fact significant threat of injury and that's what the Borden case says so what the district court did here in Hess is say what is the evidence of a significant threat of future injury in light of the original injunction rather than having to look at the future injury in light of the existing injunction I don't think so your honor because the first injunction was issued on a record in which criterion six was enforced so the threat of injury there that justified the injunction was criterion six so now they have to show a significant threat of injury in the future so that they can obtain the injunction under section 16 something to enjoy right and so what but they haven't has shown any specific future injury well as judge Robinson found they presented no evidence of a threat of future injury they had three arguments one is that seven thousand dental labs can enforce an injunction better than the government judge they rejected that and I respectfully suggest that you should because this is not a class action at the moment there's two plaintiffs so these other the fact that other dental laboratories if there was an injunction in this case could come and enforce the injunction is irrelevant and besides if they other dental laboratories have a problem with dental supplies conduct under the injunction they can complain to the government the second argument they made below was that dental supplies statement well that that dental supplies statements were during the litigation were unrepentant and that therefore the court could conclude from those statements that dental supplies might impose criterion six again after the expiration of the government injunction and the judge said that was not evidence that was significant of a significant threat of injury so that you review that those findings for an abuse of discretion and I don't believe that's evidence that dental supply is likely to do it do anything in the future they should have had in my judgment the burden should have been to introduce evidence of market conditions today like you heard Mr. Dubbs say injunction is too short so in our proceeding  taken an injunction against a significant threat of future injury and extend that injunction keep in mind they didn't object to the government injunction they didn't comment on it even though under the Tuney Act that's an available remedy so in our proceeding they should have tried to demonstrate that the injunction was too short with evidence competitive conditions what is dental supplies conduct today they didn't do any of that they just made these arguments and so when the court went to supplement the record with evidence of injury during the period when criterion 6 was enforced and they did that she did that because this court had in HES 1 I guess we're going to call it HES 1 because this would be HES 2 HES 1 held that they didn't have a damages remedy so that evidence wouldn't have been relevant there that's true as well so that was why that was denied let me spend a couple of minutes on this specific intent issue the pleading and this is now switching again to the Jersey case now even though this is a 12B6 motion this is the same plaintiff and the question of whether or not they've pled specific intent relates to this switch that they did on the pleadings that your honor referred to with Mr. Doug so we've made that this court affirmed the dismissal of the complaint on that basis they rewrote the complaint and added  and they benefited from that because when we were here the last time 2005 did you say coerce the labs or coerce the dealers coerce the dealers I'm sorry and they benefited from the allegations by now on the ground of judicial estoppel if you find that they are judicially estopped from making these allegations that the dealers are now equal willing and voluntary participants with dense supply in this monopoly if you find that they are judicially estopped then you don't need to reach any of the other issues should we reach that in light of the fact that the district court did not reach that and is there an adequate record for us to make that determination yes your honor there is an adequate record and you could reach it as an alternative ground for affirmance if you disagreed with her holding on the specific intent finding for which is an allegation of knowledge the same and equivalent to the specific intent requirement that the Sweeney court held and that every other court that has considered this sufficient to be the equivalent of the kind of intent that an actual monopolist has in the Broadcom case in the LePage's case when it's the monopolist's specific intent to have had the effect of helping extend the monopoly I mean what more has to be alleged you have to allege that the dealers wanted den supplies that the dealers had the specific intent of conferring that monopoly on den supply and in the aspects of the complaint where they allege specific intent their only allegation of dealer fault if you will is knowledge and that can't be there is conduct they allege conduct conduct is more than knowledge what for example about I mean conduct to maintain monopoly the way in which they operated they were a dealer I mean they knew what they were doing and as a result of knowing what they were doing they did what den supply had asked them to do and that helped to maintain the monopoly now what more would you need to allege to allege to show specific intent specific intent in a vertically aligned conspiracy may actually be virtually impossible to allege and they certainly didn't do it here because as the cases the other circuits that have considered this issue have held you have to allege that the victim here the coerced victim specifically wanted the manufacturer to overcharge them and limit their product choice that's implausible under Twombly and Iqbal and virtually impossible and that's why I believe that they have not alleged here whether there is a case where it could be alleged I don't know but it's certainly not here thank you very much thank you very much Mr. St. Antoine yes your honor may it please the court my name is Paul St. Antoine representing Benko Dental Company and I will be addressing the issues of the conspiracy and the issue of damages on behalf of the dealer defendants the dealer defendants were not parties to the earlier appeal in the Hes and Jersey dental cases nonetheless this court did at length assess the impact of dealer criterion number six on the dealers and it did evaluate the dealers right as direct purchasers to bring claims against Dentsply as the alleged monopolist it was with the benefit of this court's earlier decision in Hes and Jersey Dental and the intervening decision by the Supreme Court in Twombly that the court reviewed the defendants and dismissed those claims the court did so for two reasons which I will address first the court considered whether or not there had been sufficient allegations of a conspiracy and then secondly the court also considered the issue of antitrust standing and concluded that it was the dealers consistent with the earlier opinion that had the standing to bring suit under these allegations against Dentsply if they could pick up first on the issue of the conspiracy as counsel has discussed the plaintiff's amended complaint tracks very closely the government's case against Dentsply the core elements of the government's case are specifically  in the lab's case. They include Dentsply's unilateral adoption in 1993 of dealer criterion number six. They include the all or nothing choice presented to the dealer defendants about compliance with dealer criterion number six. They include acts of coercion on after the implementation of dealer criterion number six and they describe the consequences of dealer not adhering to that criterion. In the complaint the plaintiff summarizes very distinctly what was motivating the dealers to behave in the fashion that they did and the language is quite clear and this comes  81 of the lab's amended complaint. In short given Dentsply's monopoly share of the market and Dentsply's demand that its dealers participate with it in the exclusive dealing arrangement alleged herein it would be economically irrational for a Dentsply dealer or would-be dealer to carry the teeth of any of Dentsply's competitors other than the grandfather teeth in which for that particular dealer. Maybe it's economically attractive to join together with Dentsply in order to restrain trade. This is the mixed motive theory that is expressed your honor in the briefs by the by the labs. What's missing your honor are the sufficiency of the allegations. In the amended complaint there are plenty of parallel conduct. Allegations that more than meet the standard under Twombly explaining the conduct parallel conduct by the labs in distributing Dentsply teeth. What's missing and what is fatal to the labs complaint are anything other than that there under Twombly and Iqbal is not sufficient. Isn't financial gain a motive and a reason for engaging in concerted action? If the possible financial gain your honor the possibility of financial gain were sufficient that would change the standard of Twombly and Iqbal. After all in a horizontal price fixing case where the defendants are dealers there is always the possibility of economic gain if they conspire to raise price. But the mere possibility or the mere possibility of a motive does not meet the Twombly Iqbal standards for a conspiracy and that's what's missing here. You have very detailed allegations tracking the government's complaint and in order to try to state a claim plaintiffs have layered on top of that conclusory allegations of a horizontal aspect that does not meet the standard. Just so I understand what I understood Judge Robinson to say and what I think I'm hearing you say is there was an obvious benefit to Dent Supply to maintaining Dent Supply's monopoly. But in saying that the dealers helped maintain Dent Supply's monopoly there's no obvious benefit to the dealers. That's correct. Unless it's separately pledged which it hasn't been. That's right Your Honor. If the dealers want to make  choice on their own to buy as much of Dent Supply product or as much of Iverclerk product The reduction of choice as found in the government's case amounts to its monopoly without the willing participation of the dealers. You signed on to it didn't you? We would say we chose to survive Your Honor. As the allegations are pledged in the complaint no rational dealer given the importance as alleged in the case of Iverclerk and Iverclerk would not comply with dealer criteria number  But they had to know I mean that they knew they were part of something greater than themselves by participating and allowing this to continue I mean you can say they were victims but yet if they had not gone along there would have been a more competitive market there would have been others who would have been in there competing to sell to the dental labs because these dealers would have been selling their artificial teeth If you look at what would have happened under the theory that the plaintiffs have pled your honor take my client Benko who has a as alleged 5% share of Densply product if Benko had made the choice according to the plaintiffs the rational choice of thumbing his nose at Densply under the plaintiffs allegations what would have happened Densply would have disappeared from the marketplace and the same thing would have happened to all of the individual dealers if they made that choice what Densply was counting upon is that the dealers faced with that choice I didn't know that Densply well sometimes people have to make principled choices you know the fact that you were in a position that may have been painful doesn't mean that you didn't have knowledge that you were part of a conspiracy your honor I will also make this observation the dealer criterion I'm speaking giving the example of Benko the dealer criterion included a provision for grandfathered teeth we did and I think it's not a matter of dispute that all of the top five dealers carried other teeth lines that were grandfathered in at the time of the implementation of dealer criterion number six we were on suppliers therefore of competing lines to Densply if we made that          decision that is correct but that doesn't say that they lack the capacity to take our step two and that's the linchpin of the argument that's what the debate is about because they can't sue Densply because you're not suing an actual wrongdoer you're suing a conduit through which the actual wrongdoer distributed and you're stopped by Illinois brick isn't that what we keep coming back to? No it's not what we keep coming back to because they are wrongdoers they were coerced but they took the second step instead of going to the government instead of suing instead of going to the court and we think that this court's prior decision with respect to the specific effects on the dental labs is also sufficiently clear to provide us a predicate upon which to sue so the question of motive and the  of the different motives but the dealers at the end of the day had made a choice and they had the capacity notwithstanding the coercion to either walk away and say they were going to do something else or